Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
**KAMBERLAW, LLP**
3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364

Counsel for Plaintiff Miguel Rodriguez,
and the putative Class

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MIGUEL RODRIGUEZ, individually, and on behalf of others similarly situated,<br><br>       Plaintiff,<br><br>  vs.<br><br><br>OLLY PUBLIC BENEFIT CORPORATION,<br><br>       Defendant. | CASE NO. <u>'26 CV 2034 RBM SBC</u><br><br>CLASS ACTION COMPLAINT FOR:<br><br>1.  UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 ET SEQ.);<br>2.  DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF. CODE §§ 17500, ET SEQ.);<br>3.  CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.);<br>4.  BREACH OF EXPRESS WARRANTY; AND<br>5.  QUASI-CONTRACT.<br><br>"DEMAND FOR JURY TRIAL" |

Plaintiff Miguel Rodriguez on behalf of himself and others similarly situated in California, by and through his undersigned counsel, hereby files this Class Action Complaint and states as follows based on investigation and information and belief:

**CLASS ACTION COMPLAINT**

## I.    INTRODUCTION AND FACTUAL BACKGROUND

1.    This putative class action seeks to hold Defendant Olly Public Benefit Corporation ("Defendant") responsible for material misstatements on the labels of its OLLY "**METABOLISM** GUMMY RINGS" (the "Products").

2.    Seeking to capitalize on the popularity of apple cider vinegar ("ACV") supplements, which are touted for managing blood sugar, promoting weight loss and benefiting digestive health, Defendant makes numerous, prominent Representations on the front label of the Products, including:

- "**METABOLISM** GUMMY RINGS";
- "Supports Metabolism & Lean Body Mass";
- "Apple Cider Vinegar + Vitamin B12 & Chromium"; and
- "MADE WITH ACV WITH THE MOTHER".

3.    In addition, Defendant includes several, prominent images of apples on the front label, and states that the Products are "SNAPPY APPLE Flavored with other Natural Flavors" (collectively, the "Front Label Representations").

4.    Defendant makes additional representations on the side label of the Products, including:

- "IN'CIDER SCOOP", "These tasty gummy rings are formulated with goodness to promote cellular energy and a happy, healthy metabolism."; and
- "The GOODS INSIDE", "APPLE CIDER VINEGAR ACV made with the 'mother' has been used for centuries." (the "Side Label Representations" and collectively with the Front Label Representations, the "Representations").

5.    Defendant's label Representations are likely to lead reasonable consumers to believe that the Products provide the benefits of ACV and, specifically, of ACV containing the "mother", including by providing metabolism support.

6.    Defendant's Representations are false and misleading in two material ways.

7.    First, according to independent scientific testing commissioned by Plaintiff's counsel, the Products contain such an insignificant amount of acetic acid—

2

**CLASS ACTION COMPLAINT**

the active ingredient in ACV—that they cannot be labeled as an ACV product and do not provide the benefits of ACV.

8. Second, the process by which the gummies are made, which involves various stages of heating, cooling and dehydrating a liquid syrup or slurry, denatures the beneficial enzymes and bacteria that are otherwise found in the "mother".

9. Accordingly, Defendant's express label Representations are false and misleading because the Products do not provide the benefits of ACV or the mother, and do not support lean body mass or a "happy, healthy metabolism."

10. Instead, in direct contravention of Defendant's label Representations, the Products are principally comprised of sugar, which is responsible for weight gain and metabolic disease—the exact opposite effects of the purported benefits touted on the Product labels.

11. Plaintiff and reasonable consumers suffered economic injury based on the purchase price of the Products.

12. If Plaintiff and reasonable consumers had known the truth about Defendant's false and misleading Representations, they would not have purchased the Products or would have purchased them on different terms.

## II. JURISDICTION AND VENUE

13. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

14. This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through the sale and distribution of the Products in California and through the privilege of conducting business in California.

15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because

3

**CLASS ACTION COMPLAINT**

Defendant engages in continuous and systematic business activities within the State of California. Moreover, a substantial part of the events and conduct giving rise to the claims alleged herein occurred in this district. *See also* Declaration of Miguel Rodriguez Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Exhibit A.

### III.   PARTIES

16.   Plaintiff Miguel Rodriguez is a citizen of California who purchased the Products in this judicial district during the class period, as described herein. Plaintiff's claim is typical of all Class members in this regard.

17.   The advertising and labeling on the package of the Products purchased by Plaintiff, including the Representations, is typical of the advertising, labeling and representation of the Products purchased by members of the Class.

18.   The price paid by Plaintiff for the Products is typical of the price paid by members of the Class.

19.   Plaintiff relied on Defendant's Representations, as described herein.

20.   Defendant Olly Public Benefit Corporation is a Delaware corporation with its principal place of business in Hoboken, New Jersey.

21.   Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

22.   At all times material hereto, Defendant was conducting business in the United States, including in California, through its services as a manufacturer and supplier to various stores in California and by, among other things, maintaining agents for the customary transaction of business in California.

23.   Defendant and its agents promoted, marketed, and sold the Products at issue in this jurisdiction and in this judicial district.

24.   The deceptive acts giving rise to Plaintiff's claims occurred in this jurisdiction and in this judicial district.

25.   The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents, and was

**CLASS ACTION COMPLAINT**

disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged herein.

## IV. GENERAL ALLEGATIONS

### A. Apple Cider Vinegar, Acetic Acid, and the Mother

26. ACV has become a popular over-the-counter dietary supplement choice among consumers. The ACV market was valued at $723.5 million in 2025 and is projected to attain $1,259.5 million by 2035.[1]

27. Apple cider vinegar is made by fermenting the sugars from juiced apples in a two-step process. The first step involves fermentation by yeast, which turns the juice into ethanol (alcohol). In the second step, *acetobacter* bacteria convert the ethanol into acetic acid—the primary compound cited for health properties and the active ingredient in ACV—along with an essential biofilm, the "mother."

28. The "mother" refers to the living structure that consists, most importantly, of enzymes and "good" bacteria that is formed in raw, unfiltered, and unpasteurized ACV, and that is generally advertised as providing various health benefits, such as aiding the digestive system.[2]

29. Pasteurizing, dehydrating, or sustained heating of ACV to temperatures above approximately 40 degrees Celsius or 104 degrees Fahrenheit denatures or kills the good enzymes and bacteria found in the mother.[3]

30. ACV, and particularly ACV with the mother, are promoted as having potential health benefits, including helping reduce weight and improving glucose and insulin levels.

[1] https://www.futuremarketinsights.com/reports/apple-cider-vinegar-market. Last visited January 5, 2026.

[2] https://extension.wvu.edu/food-health/cooking/apple-cider-vinegar-myths-facts#:~:text=Unrefined%20and%20Unfiltered%20Apple%20Cider,t%20carry%20the%20same%20benefits.

[3] https://pmc.ncbi.nlm.nih.gov/articles/PMC11607832/#:~:text=Most%20AAB%20thrive%20at%20an,require%20further%20in%2Ddepth%20study.

### B. FDA and California Requirements for Labeling of Vinegar Products

31.    The U.S. Food and Drug Administration ("FDA") has issued a Compliance Policy Guide ("CPG") on the labeling of vinegars. *See* CPG § 525.825 (Vinegar, Definitions – Adulteration with Vinegar Eels).

32.    The FDA states as follows for the labeling of vinegar products:

Natural vinegars as they come from the generators normally contain in excess of 4 grams of acetic acid per 100 mL. When vinegar is diluted with water, the label must bear a statement such as "diluted with water to __ percent acid strength", with the blank filled with the actual percent of acetic acid – in no case should it be less than 4 percent. Each of the varieties of vinegar listed below should contain 4 grams of acetic acid per 100 mL. (20oC).

VINEGAR, CIDER VINEGAR, APPLE VINEGAR. The product made by the alcoholic and subsequent acetous fermentations of the juice of apples.[4]

33.    Accordingly, in order to be labeled as an apple cider vinegar product, a product must contain at least 4% acetic acid.  Representing that a product contains apple cider vinegar where it is comprised of less than 4% acetic acid is false, misleading and deceptive in violation of the law.

34.    A dietary supplement is also considered adulterated, pursuant to 21 U.S.C. § 342(g)(1), when "...it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations [("cGMPs")]. Here, among other things, cGMPs require that: a dietary supplement consistently meet the established specifications for its identity, purity, strength, and composition, 21 C.F.R. §111.3, and that each batch is tested to verify specifications for identity, purity, strength, and composition. 21 C.F.R. §111.75(c).

35.    A dietary supplement must accurately reflect the identity of its ingredients

---

[4] https://www.fda.gov/media/71937/download.

6

**CLASS ACTION COMPLAINT**

and their respective amounts – the FDA's Dietary Supplement Labeling Guide[5] makes this abundantly clear:

> **Must dietary ingredients that I have added to my products be present at 100% of the amount that I declare?**
>
> For dietary ingredients that are specifically added, your product must contain 100% of the volume or weight that you have declared on the label, with the exception of a deviation that is attributable to the analytical method. Products that contain less than this amount of such a dietary ingredient would be misbranded and in violation of the law. . . .

Citing 21 CFR §101.9(g)(3), in relevant part.

36.     While the FDCA serves to highlight the deceptive and misleading nature of Defendant's conduct, Plaintiff does not seek to prosecute or enforce any aspect of the FDCA.

37.     California has expressly and identically adopted the federal labeling requirements pursuant to the Sherman Food Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq.* (the "Sherman Law").  In addition, Plaintiff's allegations independently give rise to the causes of action under California's consumer protection laws, as set forth herein.

## V.     FACTUAL ALLEGATIONS

### A. Reasonable Consumers Are Likely to Be Misled by Defendant's Label Representations

38.     "The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source....[C]onsumers rely on the accuracy of those representations in making their

---

[5] FDA, Dietary Supplement Labeling Guide Chapter IV. Nutrition Labeling, Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling#4-43

**CLASS ACTION COMPLAINT**

buying decisions."[6]

39. Although this proposition applies to all consumer goods, it is particularly relevant to health-related products such as dietary supplements. Its significance is even greater when consumers lack scientific knowledge and the ability to verify the contents of supplements before purchasing, relying solely on the labeling provided by manufacturers and sellers.

40. The following are images of the labels of the Products at issue, which prominently state and depict on the front label:

- "**METABOLISM** GUMMY RINGS", adjacent to an image of an apple;
- "Supports Metabolism & Lean Body Mass";
- "Apple Cider Vinegar + Vitamin B12 & Chromium";
- "MADE WITH ACV WITH THE **MOTHER"** below a large image of an apple;
- "Snappy Apple Flavored with other Natural Flavors."

41. In addition, the side label of the Products prominently states: "IN'CIDER SCOOP These tasty gummy rings are formulated with goodness to promote cellular energy and a happy, healthy metabolism.* A delicious addition to your daily routine."

42. The side label of the Products also states, next to an image of an apple, "APPLE CIDER VINEGAR", "ACV made with the 'mother' has been used for centuries".

---

[6] *Kwikset Corp v. Superior Court,* 51 Cal. 4th 310, 328 (2011).

**CLASS ACTION COMPLAINT**







43.    The Representations are voluntary advertising statements.

44.    The Representations are not governed or required by any government or FDA regulation or requirement.

**CLASS ACTION COMPLAINT**

45.    Defendant voluntarily makes the Representations on the labels of the Products to appeal to consumers and to increase sales of the Products.

46.    These Representations lead reasonable consumers to believe that the Products are an ACV product, which provides the benefits of ACV, including by supporting metabolism and lean body mass.[7]

47.    These Representations also lead reasonable consumers to believe that the Products provide the benefits of an ACV product made with the mother.

48.    These Representations are false and misleading because (1) the Products do not contain sufficient acetic acid to be labeled as an ACV product or to provide the benefits of ACV, and (2) the products do not provide the benefits of the mother.

### 1.  *The Products Do Not Provide the Benefits of ACV*

49.    Defendant's label Representations that the Products are an ACV gummy that provides the benefits of ACV are false and misleading.

50.    The Products contain such an insignificant amount of acetic acid that they cannot be lawfully labeled as an ACV product and do not provide the purported benefits of ACV.

51.    Plaintiff's counsel commissioned scientific testing of Defendant's Products by an independent laboratory, which holds numerous accreditations, including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF).

---

[7] The Products contain two other active ingredients, vitamin B12 and chromium. Vitamin B12 is not known to support metabolism of lean body mass.  Vitamin B12 is "required for the development, myelination, and function of the nervous system; healthy red blood cell formation; and DNA synthesis." https://ods.od.nih.gov/factsheets/VitaminB12-HealthProfessional/#:~:text=Vitamin%20B12%20is%20required%20for,1%2D3%2C5%5D. While some preliminary research supports the notion that chromium could reduce food intakes, hunger levels and fat cravings, "the overall effect of chromium supplementation on body weight is of 'debatable clinical relevance' and the overall quality of the evidence is low." https://ods.od.nih.gov/factsheets/Chromium-HealthProfessional/#:~:text=Therefore%2C%20chromium%20supplementation%20has%20been,12%2C66%2D69%5D.

10

**CLASS ACTION COMPLAINT**

52. The testing was conducted by liquid chromatography, in accordance with the Journal of AOAC International, Vol. 86, No. 5, 2003, with slight modifications to facilitate dissolution of the sample based on the gummy format of the Products.

53. Liquid chromatography is used to separate, identify and quantitate various components based on their distinct chemical properties.[8]

54. The testing demonstrates that the Products contain 7.80 mg of acetic acid per gummy, with an average gummy weight of 6.280 grams.

55. Accordingly, the Products contain only 2.6% acetic acid per gummy, well below the required 4% acetic acid that is required for a product to be labeled as an ACV product.

56. On information and belief, the ingredients and product composition is and was substantially the same for all of Defendant's Products during the Class Period (defined below), thus all of Defendant's Products contain an insignificant amount of acetic acid.

57. Because the Products do not contain the required minimum of acetic acid, Defendant's label statements that they are an apple cider vinegar product and are "MADE WITH ACV" are false and misleading.

58. In addition, because the Products do not contain the required minimum of acetic acid, they do not provide the purported benefits of ACV.

59. For comparison, one tablespoon of ACV contains approximately 750 mg of acetic acid.[9]

---

[8] https://www.sciencedirect.com/topics/materials-science/liquid-chromatography.

[9]https://www.bragg.com/blogs/wellness/apple-cider-vinegar-liquid-vs-pills-which-one-is-right#:~:text=The%20Convenient%20Apple%20Cider%20Vinegar%20Supplements&text=Each%20capsule%20delivers%20750%20mg,your%20daily%20dose%20of%20wellness.

11

**CLASS ACTION COMPLAINT**

60. Scientific testing demonstrates that a daily intake of 750 mg of acetic acid may provide health benefits.[10]

61. The Product serving size is "1 gummy per day".

62. According to scientific testing, 1 gummy contains only 7.80 mg of acetic acid, or approximately 1% of the amount of acetic acid found in a tablespoon of ACV.

63. The miniscule amount of acetic acid in the Products does not provide any purported health benefit of ACV.

### 2. *The Products Do Not Provide the Benefits of the Mother*

64. The Representations are additionally misleading because they lead reasonable consumers to believe that the Products contain the mother of ACV, a premium component responsible for purported health benefits when consumed.

65. The Representations are false and misleading because the health benefits of consuming the mother are only available when the mother, including its beneficial enzymes and bacteria, is alive.

66. The process by which the Products are made, however, involves multiple stages of heating and cooling a liquid syrup to form the gummies.[11]

67. The syrup base or slurry is routinely heated to temperatures at which the beneficial enzymes and bacteria cannot survive.[12]

68. Furthermore, the "drying" or dehydration process associated with manufacturing gummies is also likely to denature the beneficial bacteria found in the mother.

---

[10] https://www.sciencedirect.com/science/article/abs/pii/S2214799316300479#:~:text=Several%20studies%20have%20showed%20vinegar,hypertension%2C%20hyperlipidemia%2C%20and%20obesity.

[11] https://www.supplysidesj.com/specialty-nutrients/generating-yummy-gummies.

[12]https://peakfinitylabs.com/blog/gummy-vitamin-manufacturing-guide.

**CLASS ACTION COMPLAINT**

69.     Accordingly, even if the gummies are initially made with ACV containing the mother, any beneficial enzymes and bacteria in the mother do not survive the manufacturing stage, rendering Defendant's label Representations false and misleading.

## B. Reasonable Consumers are Misled and Injured by Defendant's Conduct

70.     Defendant intentionally makes the label Representations but fails to include sufficient acetic acid in the Products.

71.     If consumers knew that the Products do not contain sufficient acetic acid and do not provide the benefits of ACV or ACV with the mother, they would not purchase the Products or would purchase them on different terms.

72.     There are other ACV products, including gummy products, available in the marketplace, which contain sufficient acetic acid to be labeled as ACV products.

73.     According to independent, scientific testing conducted by Defendant's counsel (by the same methodology and the same laboratory described herein), numerous other ACV gummies contain more than 4% acetic acid.

74.     Consumers, however, are deprived of making the informed choice between the Products, which do not contain sufficient acetic acid for an ACV product, and other gummies, which do contain sufficient acetic acid.

75.     Furthermore, based on the average weight per gummy and the fact that each gummy includes 3 grams of added sugar, the Products are comprised of approximately 50% sugar.

76.     Plaintiff's scientific testing demonstrates that the Products are not in fact ACV gummies that "Support Metabolism and Lean Body Mass", but instead are essentially candy, which are primarily comprised of sugar.

77.     The substantial amount of sugar in the Products further renders Defendant's label statements about the purported benefits of the Products false and misleading.

78.     Rather than supporting metabolism or lean body mass, the sugar in the

13

**CLASS ACTION COMPLAINT**

Products contributes to weight gain and disease.[13]

79.    Plaintiff and reasonable consumers suffered economic injury based on the purchase price of the Products.

### C. Plaintiff Was Misled and Injured by Defendant's Representations

80.    Plaintiff purchased the Olly Metabolism Gummy Rings numerous times during the Class Period.

81.    Most recently, Plaintiff purchased the Products from a Target store located in San Diego, California in late 2024 or early 2025.

82.    Plaintiff paid approximately $15.00 to $20.00 for each bottle of the Products.

83.    Plaintiff purchased the Products for personal use.

84.    At the time of purchase, Plaintiff viewed the Product label images, including the Representations.

85.    Based on the Representations, Plaintiff purchased the Products, or at a minimum, paid a price premium for the Products.

86.    At the time of purchase, Plaintiff reasonably believed that the purchased Products were ACV gummies, which provided the benefits of ACV, including ACV containing the mother.

87.    As described herein, the Representations are false and misleading.

88.    Defendant knew or should have known the Representations were false and misleading when it made them.

89.    Had Plaintiff known at the time of purchase that the Representations were false, Plaintiff would not have purchased the Products or would have paid less for them.

90.    Defendant continues to sell the misrepresented and misbranded Products.

91.    Plaintiff would like to purchase the Products in the future if the Products were labeled correctly and provided the benefits of an ACV product.

---

[13] https://www.hopkinsmedicine.org/health/wellness-and-prevention/obesity-sugar-and-heart-health.

**CLASS ACTION COMPLAINT**

92.   Plaintiff continues to suffer harm because he is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether he can purchase the Products in the future.

93.   Unless Defendant is enjoined from misrepresenting the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the mislabeling of the Products has been addressed and remedied.

94.   Accordingly, Plaintiff's legal remedies are inadequate to prevent future injuries.

## VI.   CLASS DEFINITION AND CLASS ALLEGATIONS

95.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of California and who do not claim any personal injury from using the Products (the "Class").

96.   Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

97.   Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

98.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

99.    **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

100.    **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether Defendant's Representations are likely to mislead reasonable consumers;
- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising, labeling and selling the Products;
- Whether Defendant violated (i) California Bus. & Prof. Code § 17200, *et seq*.; (ii) Cal. Bus. & Prof. Code § 17500, *et seq*.; and/or (iii) the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;
- Whether Defendant committed a breach of express warranty;
- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct;
- Whether Defendant was unjustly enriched; and
- The proper measure of damages sustained by Plaintiff and the Class.

101.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, purchased Defendant's Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

**CLASS ACTION COMPLAINT**

102. **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

103. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a.    The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

    b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

    c.    Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

    d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

    e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best

17

**CLASS ACTION COMPLAINT**

available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

104. Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

105. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

106. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq*.)**
**(*for Plaintiff and the Class*)**

107. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

108. Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

109. Plaintiff brings this claim seeking restitution or disgorgement of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

18

**CLASS ACTION COMPLAINT**

110.   Defendant's knowing conduct, as alleged herein, constitutes a "fraudulent" and/or "unfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

### Defendant's Conduct Constitutes a Fraudulent Business Practice

111.   Defendant's conduct constitutes a fraudulent business practice because consumers are likely to be deceived by Defendant's Representations.

112.   Defendant was and is aware that its Representations are material to consumers.

113.   Defendant was and is aware that its Representations are misleading, as described herein.

114.   Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

115.   There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

### Defendant's Conduct Constitutes an Unfair Business Practice

116.   Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

117.   Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Representations to increase sales of the Products.

118.   Defendant was and is aware that its Representations are misleading.

119.   Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Representations.

120.   Defendant's conduct is also substantially injurious because, by making the misleading Representations, Defendant prevents consumers from making accurate value comparisons between Defendant's Products and competitor products.

121.   Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the Representations is outweighed

**CLASS ACTION COMPLAINT**

by the harm to consumers.

122.    As set forth herein, the Representations are optional, voluntary advertising statements.

123.    Defendant makes the Representations to increase sales of the Products and to the detriment of consumers, who are misled and deceived.

124.    Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products, or would have paid less for the Products, if they had known the truth.

125.    Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

126.    In addition, Defendant's conduct is injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which are not misrepresented.

127.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

128.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

129.    Plaintiff and members of the Class could not have reasonably avoided injury. Defendant's uniform Representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations were misleading.

130.    Plaintiff purchased the Products with the reasonable belief that the Representations were true, and without knowledge that the Products in fact contain contain an insignificant amount of acetic acid.

### Defendant's Conduct Constitutes an Unlawful Business Act

131.    Defendant's misrepresentation of material facts, as set forth herein, also

**CLASS ACTION COMPLAINT**

constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.[14]

132. Defendant's conduct also violates the FDCA, and the identical labeling requirements adopted by California pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq*. (the "Sherman Law"). *See* Cal. Health & Safety Code § 110100 ("[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state.").

133. Defendant's conduct violates the Sherman Law. *See e.g.* Sherman Law § 110390 ("It is unlawful for any person to disseminate any false advertisement of any food . . . An advertisement is false if it is false or misleading in any particular."); § 110395 ("It is unlawful for any person to manufacture, sell, deliver or hold, or offer for sale any food . . . that is falsely advertised."); § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.").

134. Defendant's conduct in making the Representations constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, all of which are binding upon and burdensome to its competitors.

135. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions

---

[14] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true;  (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

**CLASS ACTION COMPLAINT**

Code §§ 17200-17208.

136. Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

137. As a result of the business acts and practices described above, Plaintiff and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

138. Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

### No Adequate Remedy at Law

139. Plaintiff's legal remedy is inadequate.

140. Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

141. In addition, Plaintiff's request for equitable relief goes beyond Plaintiff's request for legal damages.

142. Disgorgement is based on Defendant's gain, rather than Plaintiff's loss.

143. Accordingly, as a measure of Defendant's unjust enrichment or ill-gotten gains, disgorgement permits recovery of interest.

144. In addition, disgorgement can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation.

145. In addition, the reach of equitable relief may extend beyond that of legal

22

**CLASS ACTION COMPLAINT**

damages. While legal damages under the CLRA are limited by statute (*e.g.*, to persons who purchase for personal, family or household purposes) equitable relief under the UCL is not statutorily limited.

146. As a result of the business acts and practices described above, pursuant to § 17203, Plaintiff and members of the Class are entitled to an order enjoining such future wrongful conduct on the part of Defendant.

147. As set forth herein, Plaintiff's remedy at law is inadequate to allow Plaintiff to determine whether the labeling and advertising of the Products has been remediated and thus whether he can purchase the Products in the future.

**SECOND CAUSE OF ACTION**
**Deceptive Advertising Practices**
**(California Business & Professions Code §§ 17500, *et seq*.)**
**(*for Plaintiff and the Class*)**

148. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

149. California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .." (the "FAL").

150. Defendant violated § 17500 by making the Representations; and by representing that the Products possess characteristics and value that they do not have.

151. Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase the Products.

152. Defendant's Representations were likely to deceive, and Defendant knew or should have known that they were misleading.

153. Plaintiff purchased the Products in reliance on the Product labeling, including that the Product labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations.

154. Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business

23

**CLASS ACTION COMPLAINT**

enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

155. The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

156. In making the Representations alleged herein, Defendant knew or should have known that the Representations were deceptive and/or misleading, and acted in violation of § 17500.

157. As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500 Plaintiff and members of the Class request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

### *No Adequate Remedy at Law*

158. Plaintiff's legal remedy is inadequate.

159. Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

160. In addition, Plaintiff's request for equitable relief goes beyond Plaintiff's request for legal damages.

161. Disgorgement is based on Defendant's gain, rather than Plaintiff's loss.

162. Accordingly, as a measure of Defendant's unjust enrichment or ill-gotten gains, disgorgement permits recovery of interest.

163. In addition, disgorgement can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation.

164. In addition, the reach of equitable relief may extend beyond that of legal damages. While legal damages under the CLRA are limited by statute (*e.g.*, to persons who purchase for personal, family or household purposes) equitable relief under the FAL is not statutorily limited.

**CLASS ACTION COMPLAINT**

165. As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the Class request an Order pursuant to § 17535 enjoining such future wrongful conduct on the part of Defendant.

166. As set forth herein, Plaintiff's remedy at law is inadequate to allow Plaintiff to determine whether the labeling and advertising of the Products has been remediated and thus whether he can purchase the Products in the future.

## THIRD CAUSE OF ACTION
### Consumer Legal Remedies Act
### (Cal. Civ. Code § 1750, *et seq.*)
### (*for Plaintiff and the Class*)

167. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

168. Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

169. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

170. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

171. Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

172. Plaintiff and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

173. Purchase of the Products by Plaintiff and members of the Class are "transactions," as defined by the CLRA in California Civil Code §1761(e).

174. Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" by making the Representations, as described herein.

**CLASS ACTION COMPLAINT**

175. Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by making the Representations.

176. In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded.

177. Defendant's uniform Representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations were deceptive and/or misleading.

178. Plaintiff and members of the Class relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

179. Plaintiff and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose, including the insignificant amount of acetic acid contained in the Products.

180. Plaintiff and members of the Class would not have purchased the Products, or would have purchased them on different terms, had they known the truth.

181. Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct.

182. Such injury includes, but is not limited to, the purchase price of the Products and/or the improper premium price of the Products at which they were offered.

183. Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to increase the sale of the Products.

184. Pursuant to California Civil Code § 1782(a), on October 29, 2025, Plaintiff on his own behalf, and on behalf of members of the Class, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice letter setting forth Plaintiff's claims (the "Notice Letter").

185. Despite giving Defendant far more than 30-days from the date of the Notice

**CLASS ACTION COMPLAINT**

Letter to provide appropriate relief for violations of the CLRA, Defendant has failed to provide any such relief. As such, Plaintiff seeks compensatory, monetary and punitive damages, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

186. As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff and members of the Class request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**
(*for Plaintiff and the Class*)

187. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

188. By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, as described herein.

189. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendant.

190. Defendant, through its advertising and labeling, created express warranties that the Products comport with the label Representations that the Products are an ACV gummy that provides the benefits of ACV, including ACV with the mother.

191. The express warranties appear on all labels of the Products and specifically relate to the goods being sold.

192. Despite Defendant's express warranties about the nature of the Products, the Products do not comport with the Representations because the Products contain a miniscule amount of acetic acid and do not contain the beneficial bacteria of the mother. Thus, the Products were and are not what Defendant represented them to be.

**CLASS ACTION COMPLAINT**

193. Accordingly, Defendant breached the express warranties about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

194. Plaintiff's counsel provided Defendant with pre-suit notice of the breach of warranty, including by the October 29, 2025 notice letter.

195. Plaintiff and members of the Class purchased the Products.

196. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products, or the premium price paid for the Products.

197. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**QUASI-CONTRACT**
**(*for Plaintiff and the Class*)**

198. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

199. By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

200. Defendant had knowledge of such benefits.

201. Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

202. Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefits were obtained by Defendant's misleading Representations and unlawful conduct.

28

**CLASS ACTION COMPLAINT**

203. Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

## PRAYER

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C. For an order awarding, as appropriate, compensatory and monetary damages to Plaintiff and the Class;

D. For an order awarding injunctive relief;

E. For an order awarding restitution/disgorgement, as appropriate;

F. For an order awarding attorneys' fees and costs;

G. For an order awarding pre-and post-judgment interest; and

H. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 31, 2026                         Respectfully submitted,

KAMBERLAW, LLP


By: _s/ Naomi B. Spector_
     NAOMI B. SPECTOR

3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364
Email: nspector@kamberlaw.com

**CLASS ACTION COMPLAINT**